## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM P. GREENE, | : | |
| | : | |
| Plaintiff, | : | NO. 3:04CV658 (MRK) |
| | : | |
| v. | : | |
| | : | |
| THOMAS WRIGHT, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

In this action, Plaintiff William P. Greene sues twenty-three Defendants, including twelve police officers, three Assistant State's Attorneys, three Connecticut Department of Children and Families personnel, two judges, two Judicial Branch Victim Services Advocates, and a Superior Court Family Services worker. Mr. Greene asserts claims under 42 U.S.C. §§ 1983 and 1985(3) for violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights, stemming from an arrest that occurred on July 20, 2003, and the state prosecution that followed. Currently pending are Mr. Greene's motion for a preliminary injunction and three motions to dismiss. Plaintiff's Motion for Preliminary Injunction [doc. #49]; Motion To Dismiss [doc. #47]; Motion To Dismiss [doc. #79]; Motion To Dismiss [doc. #82]. For reasons set forth below, the Court denies the preliminary injunction motion and grants in part the motions to dismiss.

### I.

This is not Mr. Greene's first attempt to plead a cause of action, nor defendants' first effort to dismiss the action. Mr. Greene filed his first complaint in April 2004. That complaint

1

asserted claims only against the State of Connecticut, the State Judicial Branch, and the State Department of Children and Families.  Complaint [doc. #1].   The Court dismissed that complaint as to all Defendants without prejudice on the basis of sovereign immunity.  Judgment [doc. # 33]; Memorandum of Decision [doc. # 32] at 2-3.  However, the Court explained that if Mr. Greene wished to seek relief, he would need to proceed against state officials in their official (if prospective injunctive relief were sought) or individual (if damages were sought) capacities, and would need to file any such amended complaint within 30 days.  *See* Memorandum of Decision [doc #32] at 4.

Mr. Greene did so on December 22, this time naming seventeen Defendants.  Amended Complaint [doc. #35].  He also moved for a preliminary injunction, to which all seventeen Defendants objected.  *See* Plaintiff's Motion for a Preliminary Injunction [doc. #49]; Opposition To Motion for a Preliminary Injunction [doc. #60]; Objection To Motion for a Preliminary Injunction [doc. #61].  Nine of the Defendants also filed a motion to dismiss the Amended Complaint, and the other eight filed an answer.  *See* Motion To Dismiss [doc. #47]; Answer and Affirmative Defenses [doc. #52].  Mr. Greene never filed a response to the motion to dismiss, though it was due by March 21.  Instead, on April 29, Mr. Greene moved for an extension of time so that he could obtain the names of six Cheshire police officers whom he wished to add as Defendants.  Motion To Request Extension of Time [doc. #63].  The Court granted the motion and set a deadline of June 6 for Mr. Greene "to join any additional parties and file any and all amendments of pleadings."  Order [doc. #64].

On May 20, Mr. Greene submitted a second Amended Complaint, this time adding six more Defendants.  Amended Complaint [doc. #66] [hereinafter "Second Amended Complaint"].

Eleven Defendants answered the Second Amended Complaint. *See* Answer to Amended Complaint [doc. #78].  Two others moved to dismiss it, along with the original nine Defendants who had moved to dismiss the first Amended Complaint.   *See* Motion To Dismiss [doc. #82]; Defendants' Reply Brief in Support of Motion To Dismiss [doc. #84].

On May 27, twelve Defendants moved the Court to require Mr. Greene to post a $500 security bond pursuant to District Court Local Rule 83.3(a).  Motion for Security Costs [doc. #72].  The Court granted the motion the same day [doc. #73], and Mr. Greene posted the bond on June 28.  Because the posting of the bond was not entered until July 1, Defendants were unaware of Mr. Greene's compliance with the Court's May 27 order, and eleven of them (all except Jay Moore) moved to dismiss on June 29 for failure to post the required bond.  Motion To Dismiss [doc. #79].  This motion is still before the Court, and the Court now DENIES it as moot.

## II.

Mr. Greene's claims are based on the following facts taken from his Second Amended Complaint and his Affidavit in Support of Request for a Preliminary Injunction [doc. #51] [hereinafter "Preliminary Injunction Affidavit"].  Where Mr. Greene's complaint omits facts necessary for understanding the relevant issues, the Court has supplemented its description with uncontested facts from Defendants' briefs.  Mr. Green includes in his filings a bewildering array of accusations, some against named Defendants and many others against unrelated parties.  The Court has included only those allegations that bear on the present dispute against the named defendants.

On July 20, 2003, Cheshire police officers responded to a complaint by Mr. Greene's wife, Cynthia Greene.  Ms. Greene said she had been physically and sexually assaulted by her

3

husband.  Memorandum of Law in Support of the State Defendants' Motion to Dismiss [doc. #48] at 2 [hereinafter "Defendants' Feb. 25 Memo"].  Police took Ms. Greene to the Cheshire Police Department, where she met with Detective Dennis Boucher, who took a statement in which Ms. Greene accused her husband of physically abusing her.  Second Amended Complaint at 5-6.  Mr. Greene alleges that police helped Ms. Greene make her statement, which was filled with false allegations and which she has since recanted.  *Id.* at 6.

Cheshire police officers proceeded to the Greene residence, where they arrested Mr. Greene, in his view using an unjustified and dangerous display of force.  *Id.* at 17-20.  Mr. Greene also objects to three police reports – an initial incident report and two supplemental reports – which he claims contain several falsehoods and inconsistencies.  The initial incident report, written by Officer Wright, describes the Cheshire Police Department's initial contact with Ms. Greene and her case.   Preliminary Injunction Affidavit at Exhibit 10.  The first supplemental investigative report, written by Detective William Fountain, details a search of the Greene residence by Detective Lieutenant Joseph Popovich and Officer James Nemphos.  *Id.* at Exhibit 8A.  The second supplemental report is a description by Detective Boucher of his interview with Ms. Greene.  *Id.* at Exhibit 8B.   Mr. Greene alleges that police fabricated parts of these reports and omitted exculpatory details in order to strengthen the State's criminal case against him.  Second Amended Complaint at 6, 17-31.

The same morning of the arrest, Cheshire police called the Connecticut Department of Children and Families (DCF) to request that an investigator be sent to interview Cynthia Greene and the two Greene children.  DCF sent Karen Diaz.  *Id.* at 7.  According to Mr. Greene's allegations, Ms. Diaz wrote up a service agreement "which contained directives for her to

4

follow," such as getting a Temporary Restraining Order (TRO) and not allowing Mr. Greene back in the house.  *Id.* at 7.  Ms. Diaz supposedly pressured Ms. Greene into signing the agreement by threatening to take away her children if she refused.  *Id.*

In a follow-up visit the next day, DCF social worker Steven Yachtis spoke with Mr. Greene and the children.  Mr. Yachtis prepared an investigative report that Mr. Greene asserts was untruthful and calculated to paint him as an abusive husband and father.  *Id.* at 8-10.  To further bolster the State's case, Victim Services Advocate Adriana Venegas allegedly prepared an application for a TRO and pressured Ms. Greene to sign it, again threatening the removal of Ms. Greene's children.  *Id.* at 12.  According to Mr. Greene, the TRO was crucial to the State's case against Mr. Greene, because if Ms. Greene later recanted her accusations it would enable prosecutors to claim that she suffered from Battered Woman's Syndrome.  *Id.* at 12-13.

After Cheshire police took Mr. Greene into custody, he was arraigned in Meriden on charges of 2nd degree kidnapping, threatening, 3rd degree aggravated assault, assault, and 1st degree unlawful restraint.  Defendants' Feb. 25 Memo at 7.  After Mr. Greene's arraignment, Detective Boucher informed him that bail would be set at $500,000, which Mr. Greene claims was unconstitutionally excessive.  Second Amended Complaint at 5.  Upon his release on bail, Mr. Greene asked Lieutenant Scott Moore to call Mr. Greene's wife so that he could retrieve his car, clothes, and wallet.  *Id.* at 32.  According to Mr. Greene, Lieutenant Moore called but reported that Ms. Greene had refused.  When Mr. Greene requested assistance, Lieutenant Moore refused,"fail[ing] to protect Plaintiff's Fifth Amendment property rights."  *Id.*

After arraignment, the presiding judge transferred Mr. Greene's criminal case from Meriden to New Haven.  *See* Defendants' Feb. 25 Memo at 8.  Assistant State's Attorney Maxine

5

Wilensky initiated the first criminal information against Mr. Greene.  *Id.*  Mr. Greene asserts that

Ms. Wilensky violated his rights by including fabricated charges of "Risk of Injury to a child,

Reckless Endangerment 2nd Degree, and an [sic] second charge of Sexual Assault-

Spouse/Cohabitr."  Preliminary Injunction Affidavit at 38-39.  Mr. Greene's  case was then

transferred to Assistant State's Attorney Beth Baron, temporarily transferred to Assistant State's

Attorney John Waddock, who initiated a superseding criminal information against Mr. Greene

while Ms. Baron was on leave, and then transferred back to Ms. Baron.  Defendants' Feb. 25

Memo at 8-9.  Judge Richard Damiani presided over pretrial matters in Mr. Greene's criminal

case and, according to Mr. Greene, allowed his prosecution to go forward "for vindictive

reasons."  Preliminary Injunction Affidavit at 44.  Judge Damiani accepted Mr. Greene's plea of

*nolo contendere* on charges of 3rd degree assault and 2nd degree unlawful restraint on March 18,

2005.  *See* Objection to Motion for a Preliminary Injunction [doc. #61] at 4 & exhibit D.

Mr. Greene also alleges that during the State's purported rush to prosecute him, various

State officials refused to consider exculpatory evidence proffered in his defense.  First, he alleges

that Geraldine Dearington of the Meriden Superior Court Family Services Office took statements

from both Mr. Greene and his wife – who by now had allegedly retracted her accusations – but

refused to submit them into evidence.  Second Amended Complaint at 13-14.  Next, he alleges

that his wife spoke with Victim Services Advocate Diane Langlan and Ms. Baron, who refused to

take seriously Ms. Greene's recantation.  *Id.* at 14.  Indeed, according to Mr. Greene, Ms. Langlan

attempted to obtain further incriminating evidence against him, using the threat of a perjury

prosecution as leverage.  *Id.*  Mr. Greene also alleges that he informed Ms. Wilensky, Ms. Baron,

Ms. Dearington, and Judge Roland Fasano that his wife had extorted money from him by

threatening to tell police that he had violated the terms of the TRO, but that they "did not care and did not ask for any proof."  Preliminary Injunction Affidavit at 39; *see id.* at 39-44.  Mr. Greene further claims that "the agencies of the state" temporarily withheld from him two pieces of evidence – namely, a page from the first supplemental police report and the entire second supplemental report.  Second Amended Complaint at 33.

At the conclusion of its investigation on August 19, 2003, DCF officials "determined that the allegations of physical and emotional neglect of [Mr. Greene's children] by William Greene were substantiated."  Defendants' Feb. 25 Memo at 6.  Mr. Greene promptly appealed this finding, but DCF Program Director Ileana Velazquez informed him that review would be deferred because his criminal case was then still pending.  *Id.*  Mr. Greene alleges that DCF withdrew its involvement with his case because it had already accomplished its goal – fabrication of criminal evidence to be used against him – and that its investigation was tainted by gender-based discrimination.  Second Amended Complaint at 16.

Finally, Mr. Greene maintains that state officials have subjected him to harassment on two occasions.  First, on July 29, 2004, two Cheshire police officers visited his home on the pretext of checking the children's living conditions.  Preliminary Injunction Affidavit at 45.  In fact, Mr. Greene claims that the visit was at the behest of DCF and that this sort of victimization is standard DCF operating procedure.  *Id.*  Second, someone placed a copy of his arrest report in his wife's mailbox.  *Id.* at 45 & Exhibit 2API..  Mr. Greene believes that the document could only have come from "the Cheshire Police Department, the Department of Children and Families, the Meriden Superior Court, or the New Haven Superior Court."  *Id.* at 45-46.

## III.

The Court first considers Mr. Greene's March 1 request for a preliminary injunction to "enjoin[] State of Connecticut Defendants, the Cheshire Police Officers, and any of their successors in their official capacities from continuing to violate the Plaintiff's rights."  Plaintiff's Motion for a Preliminary Injunction [doc. #49] at 1.  Mr. Greene requested that the Court prohibit continued use of the Cheshire Police Officers' Initial Incident Report, Cynthia Greene's signed statement, four other Cheshire police reports, any Department of Children and Families reports written on July 20, 2003, and the Relief from Abuse Affidavit.  *Id.* at 2.  Mr. Greene also asked the Court to enjoin the criminal case against him and to protect him from Defendants' fabrications, harassment, and retaliation.  *Id.* at 2-3.

To the extent that Mr. Greene seeks relief from criminal prosecution stemming from the July 20, 2003, incident, his request is moot, as it is undisputed that his case terminated with his *nolo contendere* plea to charges of 3rd degree assault and 2nd degree unlawful restraint on March 18, 2005.  *See* Objection to Motion for a Preliminary Injunction [**doc. #61**] at 4 & exhibit D. Even if his criminal case were still pending, this Court would still be barred from granting Mr. Greene the relief he seeks by the rule in *Younger v. Harris*, 401 U.S. 37 (1971), which forbids federal courts from interfering with pending state prosecutions.  Indeed, on March 16, 2005, Judge Peter Dorsey rightly invoked *Younger* to deny Mr. Greene's earlier request for a temporary restraining order to prevent the enforcement of a state court protective order.  Ruling on Plaintiff's Motion for Temporary Restraining Order [doc. #57] at 1-2.

As to Mr. Greene's request for prospective injunctive relief, the Court cannot grant it unless he demonstrates the following: "(1) irreparable harm should the injunction not be granted,

and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going

to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive

relief." *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991).  The movant for a

preliminary injunction bears the burden of showing of irreparable harm, which "is the single most

important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex. rel. Rodriguez*

*v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (quotation marks and citation omitted). A failure

to demonstrate irreparable harm will result in a denial of preliminary injunctive relief.  *See*

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990) (explaining that a

moving party "must first demonstrate that [irreparable harm] is likely before the other

requirements for the issuance of an injunction will be considered").  To satisfy this burden, "[t]he

movant must demonstrate an injury that is neither remote nor speculative, but actual and

imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman*

*Towers, Inc.*, 51 F.3d 328, 332 (2d Cir.1995) (quotation marks and citation omitted).

     The Court concludes that Mr. Greene has not made the required showing of irreparable

harm in absence of the preliminary injunction.  Because the criminal case against him has

concluded, and because DCF has closed its investigation of the July 20, 2003, incident, *see*

Defendants' Feb. 25 Memo at 6, the reports of which Mr. Greene complains are no longer being

used.  Mr. Greene offers no evidence that state officials are likely to subject him to further

prosecution.  Should any state official seek to rely on the complained-of reports in a future

criminal proceeding, Mr. Greene would be able to challenge their veracity at that time.

     Nor has Mr. Greene alleged facts suggesting that future harassment and retaliation by

Defendants is probable.  Even if the Court were to agree with Mr. Greene that the July 29, 2004,

police visit to his home and the mailing of his arrest report to his wife constitute harassment and retaliation, he has failed to demonstrate a pattern of abuse that is likely to continue.  *See, e.g.*, *Local 32B-32J Serv. Employees Int'l Union, AFL-CIO v. Port Auth. of New York and New Jersey*, 944 F. Supp. 208, 219 (S.D.N.Y. 1996) (rejecting plaintiffs' application for a preliminary injunction against defendant's threats and harassment because "wrongful, isolated errors" do not establish "a pattern of harassment"); *see also Kaplan v. Bd. of Educ. of City Sch. Dist. of the City of New York*, 759 F.2d 256, (2d Cir. 1985) (rejecting plaintiff's claim of anticipated harm as "too speculative to constitute a clear showing of immediate irreparable harm" as is required of a preliminary injunction applicant).

In sum, Mr. Greene has failed to establish an injury that is sufficiently "actual and imminent" and thus cannot make the requisite showing of "irreparable injury."  Accordingly, the Court DENIES his motion for a preliminary injunction without prejudice to renewal if he can allege facts demonstrating irreparable harm.

## IV.

The Court turns next to the two motions to dismiss before it.  All Defendants (except those associated with the Cheshire Police Department) move to dismiss Mr. Greene's suit,[1] on a variety of bases. Motion To Dismiss [doc. #47]; Motion To Dismiss [doc. #82].  In assessing the motions to dismiss, the Court heeds the Supreme Court's admonition that his complaint "should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46

---

[1] The Cheshire Police Department Defendants moved to dismiss for failure to post a security bond, *see* Motion To Dismiss [doc. #79], but as explained earlier, the Court has denied the request as moot.

10

(1957).  For purposes of the motions to dismiss, the Court accepts as true all allegations set forth

in the Second Amended Complaint and draws all reasonable inferences in Mr. Greene's favor.

*See ICM Holding Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir. 2001).  Moreover,

because Mr. Greene is pursuing his case *pro se*, the Court gives his complaint a broad

construction and "interpret[s] [it] to raise the strongest arguments that [it] suggests." *Cruz v.

Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted); *see also Weinstein

v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001) (noting that *pro se* civil rights complaints deserve a

particularly liberal construction).

**A.      Section 1985(3)**

In his second Amended Complaint, Mr. Greene lists a violation of 42 U.S.C. § 1985(3)

among his claims.  A claimant seeking to establish § 1985(3) liability must allege: "(1) a

conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of

persons of equal protection of the laws, . . . ; [and] (3) an act in furtherance of the conspiracy; (4)

whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of

Oneonia*, 221 F.3d 329, 341 (2d Cir. 2000) (citation and quotation marks omitted).  The Second

Circuit has also stated that a § 1985(3) conspiracy "must . . . be motivated by some racial or

perhaps otherwise class-based, invidious discriminatory animus." *Mian v. Donaldson, Lufkin &

Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (internal quotation marks omitted)

(quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)); *see also

Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

In his complaint, Mr. Greene alleges that his case was tainted by gender bias:

This case also contains reverse class based discrimination in the fact that if a

11

woman says a man wronged her she would never lie and the man will always lie
so that man must be guilty of all allegations.  Therefore we do not need to
investigate anything the man say [sic] we will just prosecute him.

Second Amended Complaint at 16.  In *New York State Nat'l Org. for Women v. Terry*, the

Second Circuit held that "women may constitute a class for purposes of § 1985(3)."  886 F.2d

1339, 1358-59 (2d Cir. 1989).  However, four years later in *Town of West Hartford v. Operation*

*Rescue*, the Second Circuit explicitly declined to consider whether women qualified as a class

under the statute.  991 F.2d 1039, 1046 (2d Cir. 1993).  ("Respondents' contention . . . is that the

alleged class-based discrimination is directed . . . at women in general. We find it unnecessary to

decide whether *that* is a qualifying class under § 1985(3) . . . .").  *See also People by Abrams v.*

*Terry*, 45 F.3d 17, 21-22 (2d Cir. 1995) (finding that a district court had jurisdiction to consider

the plaintiff's gender-based § 1985(3) claim but declining to pass on the claim's merit).  Despite

the apparent confusion in the Second Circuit regarding whether gender qualifies as a class for

purposes of § 1985(3), for present purposes the Court is willing to assume that *Terry* represents

the law of the Second Circuit.  *See generally Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332,

1338 (11th Cir. 1999) ("Any conclusion that women are not a protected class under § 1985(3)

would run into a solid wall of contrary precedent.").  Ostensibly, however, *Terry* concerns only

discrimination against women, not against men, though the decision also might be read as

gender-neutral.  *See Terry*, 886 F.2d at 1359 ("Distinctions based upon immutable characteristics

such as sex have long been considered invidiously discriminatory. . . .  As conspiracies directed

against women are inherently invidious, and repugnant to the notion of equality of rights for all

citizens, they are therefore encompassed under the Act.").

In any event, the Court is willing to assume for purposes of this case – but without

12

deciding – that gender-based prejudice is the sort of "otherwise class-based, invidious discriminatory animus" that qualifies under § 1985(3).   For Mr. Greene's § 1985(3) claim still fails because he does not allege any facts that would permit one to conclude or infer that he was targeted on account of his gender.  Mr. Greene suggests no facts from which the Court or anyone else would be able to infer discriminatory intent on the part of any Defendant.   Indeed, the majority of Defendants (sixteen of twenty-three) he charges participated in the alleged conspiracy are male.  Mr. Greene's only gender-based accusation is that his testimony was disregarded because he is male.  Yet, he devotes a substantial portion of his Second Amended Complaint to showing that his wife's alleged efforts to clear his name were similarly rebuffed. *See* Second Amended Complaint at 13-15.  While at this stage the Court must accept as true Mr. Greene's allegations of a conspiracy against him, he provides nothing beyond conclusory allegations to suggest the conspiracy was based on gender.   And conclusory allegations of the sort contained in Mr. Greene's Second Amended Complaint simply do not suffice.  *See Foord v. Moore*, 237 F.3d 156, 162 n.3 (2d Cir. 2001) (holding that plaintiff's § 1985(3) claim fails "for lack of any evidence of the requisite discriminatory intent"); *Thomas*, 165 F.3d at 147 ("[E]ven if [plaintiff] had shown evidence of a conspiracy, he alleges no facts and presented no evidence that could have shown that [defendants] acted with class-based discriminatory animus."); *see also Keating v. Carey*, 706 F.2d 377, 392 n.2 (2d Cir. 1983) ("[T]his Circuit has consistently held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' cannot survive a motion to dismiss.") (citation and quotation marks omitted).  Therefore, the Court dismisses Mr. Greene's § 1985(3) conspiracy claim against all Defendants.

13

**B.      Section 1983**

Mr. Greene also asserts § 1983 claims against all Defendants.   Those Defendants moving

to dismiss have done so based on Rules 12(b)(4) and 12(b)(6) of the *Federal Rules of Civil*

*Procedure*.  To facilitate the discussion of Mr. Greene's claims, the Court has grouped the

moving Defendants into three categories: (1) judges; (2) Assistant State's Attorneys; and (3)

judicial branch and DCF personnel.

**1.      Judges**

Mr. Greene's Second Amended Complaint lists Judges Fasano and Damiani as

Defendants.  The Second Amended Complaint makes no reference to Judge Fasano, but the

affidavit in support of Mr. Greene's request for a preliminary injunction accuses him of failing to

prevent Ms. Greene from using the threat of enforcing her TRO to extort money from Mr.

Greene.  *See* Preliminary Injunction Affidavit at 39-44.  In addition to claiming judicial

immunity, which both judges assert, Judge Fasano moves to dismiss under Rule 12(b)(4) of the

*Federal Rules of Civil Procedure*[2] because Mr. Greene has failed to serve him with a complaint.

Motion To Dismiss [doc. #82].

Mr. Greene did not name Judge Fasano as a defendant until his second Amended

Complaint, which contains no record of service.  Under Fed. R. Civ. P. 4(m), "[i]f service of the

summons and complaint is not made upon a defendant within 120 days after the filing of the

---

[2] Though Judge Fasano moves to dismiss under Rule 12(b)(4), the Court believes Rule 12(b)(5) is more applicable. *See* 5B Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353, at 334 (3d ed. 2004) ("Technically . . . a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) . . . that deal[] specifically with the content of the summons.  A Rule 12(b)(5) motion is the proper vehicle for challenging . . . the lack of delivery of the summons and complaint.").

complaint, the court . . . shall dismiss the action without prejudice as to that defendant or direct

that service be effected within a specified time . . . ."  Mr. Greene filed his second Amended

Complaint on May 20, more than 120 days ago.  In any event, and as explained below,  Mr.

Greene's claims against both Judge Fasano and Judge Damiani must be dismissed due to

absolute judicial immunity.

Under the doctrine of judicial immunity, judges who act within their judicial capacity are

immune from suit for money damages, so long as they do not act in the clear absence of

jurisdiction.  *See Mireles v. Waco*, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed. 2d 9 (1991) (per

curiam); *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005).  The doctrine benefits the public

by allowing judges to discharge their duties "with independence and without fear of

consequences."  *Huminski*, 396 F.3d at 74 (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct.

1213, 18 L.Ed.2d 288 (1967)); *see Austern v. Chicago Bd. Options Exch.*, 898 F.2d 882, 885 (2d

Cir. 1990) ("[J]udicial immunity . . . protect[s] judicial independence by insulating judges from

vexatious actions prosecuted by disgruntled litigants.") (second alteration in original) (internal

quotation marks omitted).

Based on the Supreme Court's opinion in *Stump v. Sparkman*, 435 U.S. 349 1978), the

Second Circuit has devised the following test to determine whether a judge's actions merit

immunity:

> First, a judge will not be deprived of immunity because the action he took was in
> error, was done maliciously, or was in excess of authority; rather, he will be
> subject to liability only when he has acted *in the clear absence of all jurisdiction*. .
> . . Second, a judge is immune only for actions performed in his judicial capacity.

*Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997) (citation and internal quotation marks

omitted) (emphasis in original).  Allegations of bad faith or malice do not suffice to abrogate judicial immunity, "even though unfairness and injustice to a litigant may result on occasion." *Id.* at 932 (internal quotation marks omitted).

Mr. Greene alleges no facts that would strip either Judge Fasano or Judge Damiani of their absolute judicial immunity.  The lone reference to Judge Damiani comes not in the Second Amended Complaint, but in an affidavit supporting Mr. Greene's request for a preliminary injunction.  Mr. Greene accuses Judge Damiani of allowing his prosecution to go forward "for vindictive reasons."  Preliminary Injunction Affidavit at 44.  Mr. Greene does not charge Judge Damiani with acting in the absence of jurisdiction.  Instead, the act of which he complains – permitting Mr. Greene's prosecution to advance – is a paradigmatically judicial one.  Similarly, Mr. Greene's allegation against Judge Fasano – that he failed to act when informed that Ms. Greene was extorting money from Mr. Greene – does not suggest the absence of jurisdiction. Accordingly, Mr. Greene's claims against both Judge Damiani and Judge Fasano are hereby dismissed with prejudice under the doctrine of absolute judicial immunity.

### 2.    Assistant State's Attorneys

Mr. Greene's claims against Assistant State's Attorneys Maxine Wilensky, Beth Baron, and John Waddock are similarly barred by the doctrine of absolute prosecutorial immunity.  "It is well established that prosecutors have absolute immunity from a civil suit for damages under 42 U.S.C. § 1983 when engaged in activities that are 'intimately associated with the judicial phase of the criminal process.'" *Root v. Liston*, 363 F. Supp. 2d 190, 193 (D. Conn. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).  Prosecutorial immunity affords prosecutors the freedom they need to do their jobs effectively.  *See Mangiafico v. Blumenthal*, 358 F. Supp.

16

2d 6, 14 (D. Conn. 2004) ("[T]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." (quoting *Imbler*, 424 U.S. at 424-25)).

Mr. Greene accuses Ms. Wilensky of wrongfully including in her criminal information against him charges of "Risk of Injury to a child, Recless Endangerment 2nd Degree, and an [sic] second charge of Sexual Assault-Spouse/Cohabitr."  Preliminary Injunction Affidavit at 38-39. He further maintains that Ms. Baron allowed his prosecution to proceed despite his wife's purported recantation, Second Amended Complaint at 14, and that Ms. Baron and Ms. Wilensky failed to press charges against his wife after Mr. Greene told them that she had extorted money from him, Preliminary Injunction Affidavit at 39.  The choosing of which charges to bring against a defendant – and whether to charge a defendant at all – are quintessentially prosecutorial functions.  Though Mr. Greene alleges that his prosecution was an integral part of the larger conspiracy against him, as the Second Circuit recently explained, the shield of prosecutorial immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy."  *Shmueli v. City of New York*, No. 03-0287-PR, ___ F.3d ____, 2005 WL 2224979, at *5 (2d Cir. Sept. 14, 2005) (upholding absolute immunity for defendants accused of prosecuting plaintiff on charges known to be false).  Ms. Wilensky and Ms. Baron are therefore absolutely immune from § 1983 liability for the acts alleged by Mr. Greene.[3]  Finally, Mr. Greene's pleadings suggest no misconduct by Mr.

---

[3] Prosecutorial immunity shields prosecutors from damages liability under § 1983 but does not bar requests for injunctive relief.  *See Shmueli*, 2005 WL 2224979, at *7.  But as the Court has already denied Mr. Greene's requests for injunctive relief, all claims against the Assistant State's Attorneys are thus dismissed.

Waddock and on that basis alone should be dismissed.  *See Iwachiw v. New York State Dep't of Motor Vehicles*, 299 F. Supp. 2d 117, 121 (E.D.N.Y. 2004) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." (quoting *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999))).

### 3.    Judicial Branch and DCF Personnel

Mr. Greene's Second Amended Complaint also names three judicial branch personnel (Adriana Venegas, Diane Langlan, and Geraldine Dearington) and three DCF personnel (Karen Diaz, Steven Yachtis, and Ileana Velazquez) as defendants.  Ms. Venegas and Ms. Langlan are Victim's Advocates for the Connecticut Judicial Branch's Office of Victim Services, and Ms. Dearington is with the Meriden Superior Court Family Services Office.  Karen Diaz and Steven Yachtis are DCF investigators, and Ileana Velazquez is a DCF program director.

Like Judge Fasano, Ms. Dearington maintains that she was never served with the Second Amended Complaint, *see* Mem. of Law in Support of State Defs. Roland Fasano and Geraldine Dearington's Mot. To Dismiss [doc. #83] at 5 [hereinafter "Defendants' July 20 Memo"], and there is no record of service in the Court's docket.  As explained above, the 120-day deadline for service under Rule 4(m) has passed.  Ms. Dearington informed Mr. Greene of his failure to serve her on July 20, *see id.*, and he has still not corrected his error.  Moreover, Mr. Greene has provided no justification for his tardiness; nor has he requested more time to effectuate service.  Under these circumstances, Rule 4(m) authorizes a District Court to dismiss his complaint.  *See, e.g.*, *Brady v. Dammer*, No. 1:04 CV 1126 LEK/DRH, 2005 WL 1871183, at *3-*4 (N.D.N.Y. Aug. 3, 2005) (dismissing plaintiff's complaint under Rule 4(m) because he did not demonstrate

18

good cause for his failure meet the 120-day deadline); *see also* 4B Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137, at 349 n.5 (3d ed. 2002) (listing cases in which courts have dismissed complaints for failure to comply with the 120-day requirement). Accordingly, the Court dismisses Mr. Greene's claims against Ms. Dearington without prejudice and for failure to effectuate service in a timely manner.

The remaining Judicial Branch and DCF Defendants argue that Mr. Greene's allegations fail to state a claim upon which relief can be granted. They point out, rightly, that any § 1983 claims by Mr. Greene based on malicious prosecution must fail, because Mr. Greene cannot establish the necessary elements. *See* Defendants' Feb. 25 Memo at 20. In a § 1983 suit, Connecticut law governs the elements of a malicious prosecution charge. *See Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004) ("Although § 1983 provides plaintiffs with a federal cause of action, generally we borrow the elements of the underlying malicious prosecution from state law."). Among those elements is a requirement that "the criminal proceedings have terminated in favor of the plaintiff." *Smith v. Lanati*, No. Civ.A. 3:04-CV-1701, 2005 WL 2244957, at *2 (D. Conn. Sept. 13, 2005) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)). As Mr. Greene pled *nolo contendere* to charges of charges of 3rd degree assault and 2nd degree unlawful restraint on March 18, 2005, he cannot claim the required favorable termination. *See, e.g.*, *Marczeski v. Law*, 122 F. Supp. 2d 315, 328 (D. Conn. 2000) (observing that a plea of *nolo contendere* is not a favorable termination as required for malicious prosecution).

However, malicious prosecution is not the only claim that can be ascertained from Mr. Greene's pleadings. Generously construed, Mr. Greene's allegations assert the existence of a

19

conspiracy to fabricate evidence against him and suppress evidence favorable to him.  He charges

Karen Diaz with pressuring his wife to sign a service agreement requiring his wife to stay away

from him and to obtain a TRO, threatening to take away her children if she refused.  Second

Amended Compliant at 7.  He alleges that Steven Yachtis filled his investigative report with false

charges of abuse.  *Id.* at 8-10.  Mr. Greene accuses Ms. Venegas of pressuring his wife to sign an

application for a TRO, which included false charges against him, also by threatening to take

away her children.  *Id.* at 12.  Finally, he charges Ms. Langlan with refusing to acknowledge his

wife's recantation and seeking to obtain from her more false evidence against him, using a

potential perjury prosecution as a threat.  *Id.* at 14.  Mr. Greene accuses Ms. Velazquez of no

wrongdoing, and all claims against her are hereby dismissed.

  If true, Mr. Greene's claims of a conspiracy to falsely incriminate him could constitute

behavior actionable under § 1983.  In *Ricciuti v. N.Y.C. Transit Authority*, the Second Circuit

explained that "a police officer's fabrication and forwarding to prosecutors of known false

evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'"

124 F.3d 123, 130 (2d Cir.1997) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)).

Such misconduct "violates the accused's constitutional right to a fair trial, and the harm

occasioned by such an unconscionable action is redressable in an action for damages under 42

U.S.C. § 1983."  *Ricciuti*, 124 F.3d at 130.  Other cases similarly find that the fabrication of

incriminating evidence or suppression of exculpatory evidence can give rise to § 1983 liability.

*See, e.g.*, *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (holding that fabrication of

evidence by police is actionable under § 1983); *Burge v. Parish of St. Tammany*, 187 F.3d 452,

479-80 (5th Cir. 1999) (finding a police officer's suppression of exculpatory evidence to be

actionable under § 1983).  Though most of these cases involve misconduct by police, a conspiracy by other state actors involved with the justice system to fabricate and suppress evidence in order to effectuate a criminal conviction would similarly work a "corruption of the truth-seeking function of the trial process."  Therefore, to the extent that the Second Amended Complaint alleges a § 1983 claim against the DCF and Judicial Branch Defendants for an alleged conspiracy to fabricate and suppress evidence, Mr. Greene has stated a claim for which relief is possible. *See, e.g., Conley*, 355 U.S. at  45-46 (a complaint "should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.").

Defendants alternatively argue that their motions to dismiss should be granted on grounds of qualified immunity.  *See* Defendants' Feb. 25 Memo at 21-26; Defendants' July 20 Memo at 4-5.  Qualified immunity protects from suit state employees whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kerman v. City of New York*, 261 F.3d 229, 236 (2d Cir. 2001).  To determine whether qualified immunity is appropriate, a court must look to the specific factual circumstances underlying the alleged wrongdoing, and then "make the ultimate legal determination of whether qualified immunity attaches on those facts."  *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003); *see Saucier v. Katz*, 533 U.S. 194, 202 (2001).  Mr. Greene alleges the violation of a clearly established right of which a reasonable person would be aware – the right to be free from the "corruption of the truth-seeking function of the trial process" that occurs when evidence is purposely fabricated or suppressed by state officials.  Mr. Greene may ultimately be unable to prove these allegations and  Defendants may well ultimately demonstrate that they are entitled to

qualified immunity in any event, but at this stage of the proceeding, the Court cannot say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).   Therefore, the Court DENIES Defendants' motions to dismiss with respect to Ms. Ms. Diaz, Mr. Yachtis, Ms. Venegas and Ms. Langlan.

## V.

To summarize, the Court:  (1) DENIES as moot Defendants' June 29 Motion To Dismiss for failure to post a security bond [**doc. #79**]; (2) DENIES WITHOUT PREJUDICE Plaintiff's Motion for Preliminary Injunction [**doc. #49**]; (3) GRANTS IN PART and DENIES IN PART Defendants' February 28 Motion To Dismiss [**doc. #47**]; and (4) GRANTS Defendants' July 21 Motion To Dismiss [**doc. #82**].  The Court grants the February 28 and July 21 motions to dismiss with respect to the following:  (a) all claims against Ms. Baron, Judge Damiani, Ms. Dearington, Judge Fasano, Ms. Velazquez, Mr. Waddock, and Ms. Wilensky; (b) all claims under 28 U.S.C. § 1985(3); and (c) all claims under 42 U.S.C. § 1983 for malicious prosecution.  The Court denies the motions to dismiss of Defendants Karen Diaz, Diane Langlan, Steven Yachtis, and Adriana Venegas but only to the extent of Mr. Greene's § 1983 claim for violations of his right to a fair trial.

As a result of the Court's rulings, only the following Defendants remain in this suit: Dennis Boucher, Jay Bunnell, Damian Day, Karen Diaz, James Fasano, William Fountain, Diane Langlan, Jay Markella, Scott Moore, James Nemphos, Joseph Popovich, Timothy Rodgers, Michael Strollo, Adriana Venegas, Thomas Wright, and Steven Yachtis.

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


Dated at New Haven, Connecticut: September 21, 2005.